## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

APERION CARE, INC.,[1]                              \*
as Authorized Representative of:
Francisca Delgado,                                  \*

BRIA HEALTH SERVICES, LLC,                          \*
as Authorized Representative of:
Winnie Boykin,                                      \*
Karen Brown,
Joseph Klimas,                                      \*
Cynthia Little,
Sandra McDonald,                                    \*
Wilbert Spencer,
Anthony Caldwell,                                   \*
Larry Cummings,
Steven Ratcliff,                                    \*
Orlandus Searcy,
                                                    \*
EVEREST CARE GROUP, LLC,
as Authorized Representative of:                    \*
Dwight Akins,
Donald Murczek,                                     \*
Derrick Griffin,
Theodore Barnes,                                    \*
David Pitre,
Hazel Brand,                                        \*

GRAND LIFESTYLES, LLC,                              \*
as Authorized Representative of:
Juan Beard,                                         \*
Lee Thirsty,
ICARE FINANCIAL SERVICES, INC.,                     \*
as Authorized Representative of:
Trudy Khan,                                         \*

ITEX COMPANY, INC.                                  \*
as Authorized Representative of:
Victorina Cruz,                                     \*

---

[1] Federal law requires state agencies to permit applicants and beneficiaries to designate an individual or organization to act responsibly on their behalf in assisting with the individual's application and renewal of eligibility and other ongoing communications with the state agency responsible for issuing determinations on Medicaid eligibility. *See* 42 C.F.R. § 435.923.

Miguel Catala,                                                  *
Claudia Hale,
                                                               *

LEGACY HEALTHCARE
FINANCIAL SERVICES, LLC,                                        *
as Authorized Representative of:
Cecil Gittens,                                                 *
Harry Mueller,
Glenda Buchholtz,                                             *

MAESTRO CONSULTING SERVICES, LLC                              *
a/k/a Symphony Post-Acute Network
as Authorized Representative of:                              *
Barbara Craddock,
Daryl Jones,                                                  *
Crystal Garrett,
Kirk Lis,                                                     *
Dannah Norwood,
                                                               *
VILLA FINANCIAL SERVICES, LLC,
as Authorized Representative of:                             *
Idella Adell,
Helen Emerson,                                               *
Sophie Krasula,
Johnnie King,                                                *
James Hubbard,
Luvenia Stevenson,                                           *

            PLAINTIFFS,                                       *

PLAINTIFFS ARE CLASS REPRESENTATIVES                        *
OF THE PLAINTIFFS' CLASS THEY SEEK TO
REPRESENT,                                                   *

v.                                                           *

FELICIA F. NORWOOD, in her official                         *
capacity as the Director of the
Illinois Department of Healthcare                           *
and Family Services,
                                                               *
AETNA MEDICAID ADMINISTRATORS, LLC
d/b/a AETNA BETTER HEALTH, INC.                             *
333 West Wacker Drive
Chicago, Illinois 60606                                     *

**MERIDIAN HEALTH PLAN, Inc.**
**333 South Wabash Ave., Suite 2900**                    *
**Chicago, Illinois 60604**
                                                          *
**COMMUNITY CARE ALLIANCE OF ILLIOIS, LLC**
**322 S. Green Street, Suite 400**                        *
**Chicago, Illinois 60607**
                                                          *
**HEALTHCARE SERVICE CORPORATION, d/b/a**
**BLUE CROSS BLUE SHIELD OF ILLINOIS,**                   *
**225 N. Michigan Ave.**
**Chicago, Illinois 60601**                               *

**ILLINICARE HEALTH PLAN, INC.**                          *
**208 S. LaSalle St., Suite 814**
**Chicago, Illinois 60604**                               *

**COOK COUNTY, and COOK COUNTY HEALTH**                   *
**AND HOSPITALS SYSTEM, and**
**COUNTYCARE HEALTH PLAN**                                *
**1900 West Polk Ave., Suite 220**
**Chicago, Illinois 60612**                               *

**NEXTLEVEL HEALTH PARTNERS, INC.**                       *
**303 W. Madison, Suite 1110**
**Chicago, Illinois 60606**                               *

**WELLCARE HEALTH PLANS, INC.**                           *
**d/b/a Harmony**
**29 North Wacker Drive**                                 *
**Chicago, Illinois 60606**
                                                          *
**CIGNA CORPORATION,**
**d/b/a Cigna-HealthSpring CarePlan of Illinois,**        *
**208 S. LaSalle St., Suite 804**
**Chicago, Illinois 60604**                               *

**HUMANA, INC.**                                          *
**801 Adlai Stevenson Drive.**
**Springfield, Illinois 62703**                           *

**MOLINA HEALTHCARE OF ILLINOIS, INC.**                   *
**801 Adlai Stevenson Drive.**
**Springfield, Illinois 62703**                           *

                                                          *

3

**DEFENDANTS.**

\*

# COMPLAINT FOR DECLARATORY JUDGMENT, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

## I.     PRELIMINARY STATEMENT

As a condition of receiving federal funds, the State of Illinois is required to operate the Medicaid program in compliance with the Social Security Act and implementing regulations, pursuant to 42 U.S.C. § 1396(c).  This case concerns the failure of Defendant, Felicia F. Norwood ("Defendant" and/or "Norwood"), the Director of the Illinois Department of Healthcare and Family Services ("Defendant" and/or "HFS") and certain entities which have contracted with HFS to provide Medicaid to residents of Illinois ("Defendant" and/or "Defendant MCOs") to comply with their obligations to afford Medicaid benefits to residents in skilled nursing and/or supportive living facilities in compliance with the federal rules and regulations of the United States. Defendants are directly responsible for policies necessary for the implementation of a system for determination of providing Medicaid benefits that complies, in all aspects, with federal law.  The failures by the Defendants to grant and provide for Medicaid benefits to residents of skilled nursing and/or supportive living facilities who are eligible for Medicaid benefits constitute violations of the Federal Medicaid Act and implementing regulations at 42 USC § 1396u-2, 42 C.F.R. § 438.10, and 42 .U..SC § 1396(a), § 1902(a)(37)(a).

## II.     JURISDICTION AND VENUE

This action arises under the Federal Medicaid Act and implementing regulations at 42 U.S.C. § 1396u-2, 42 C.F.R. § 438.10, and 42 U.S.C. § 1396(a), § 1902(a)(37)(a) and Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 12131 *et seq.*  Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202. The jurisdiction of this court is invoked pursuant to 28 U.S.C.

4

§§1331, 1343(k) and 28 U.S.C. §§2201 and 2202.  Additionally, the jurisdiction of this court is invoked to secure protection to redress the deprivation under color of state law, statute, custom and/or usage of a right, privilege and/or immunity secured to the Plaintiffs by the Fourteenth Amendment to the Constitution of the United States, the Equal Protection Clause, 42 U.S.C. §1983. Venue lies in this forum pursuant to 28 U.S.C. § 1391(e).

### III.    PARTIES

1.      Aperion Care, Inc. is headquartered in Lincolnwood, Illinois.  Aperion Care, Inc. provides financial and business consulting services to a network of skilled nursing home facilities in Illinois, referred to as the Aperion network ("Aperion" and/or "Facility").  Aperion provides long-term care nursing facility services to disabled, insolvent residents of Illinois, such as the Class Representatives in this matter.

2.      Bria Health Services, LLC is headquartered in Skokie, Illinois.  Bria Health Services, LLC provides financial and business consulting services to a network of skilled nursing home facilities in Illinois, referred to as the Bria network ("Bria" and/or "Facility").  Bria provides long-term care nursing facility services to disabled, insolvent residents of Illinois, such as the Class Representatives in this matter.

3.      Everest Care Group, LLC is headquartered in Skokie, IL.  Everest Care Group, LLC provides financial and business consulting services to a network of skilled nursing home facilities in Illinois, referred to as the Everest network ("Everest" and/or "Facility").  Everest provides long-term care nursing facility services to disabled, insolvent residents of Illinois, such as the Class Representatives in this matter.

4.      Grand Lifestyles, LLC is headquartered in Skokie, IL.  Grand Lifestyles, LLC provides financial and business consulting services to a network of supportive living facilities in Illinois, referred

to as the Grand Lifestyles network ("Grand Lifestyles" and/or "Facility"). Grand Lifestyles provides supportive living facility services to disabled and/or insolvent residents of Illinois, such as the Class Representatives in this matter.

5.     ICare Financial Services, Inc. is headquartered in Skokie, Illinois. ICare Financial Services, Inc. provides financial and business consulting services to a network of skilled nursing home facilities in Illinois, referred to as the ICare network ("ICare" and/or "Facility"). ICare provides long-term care nursing facility services to disabled, insolvent residents of Illinois, such as the Class Representatives in this matter.

6.     ITEX Company, Inc. is headquartered in Lincolnwood, Illinois. ITEX Company, Inc. provides financial and business consulting services to a network of skilled nursing home facilities in Illinois, referred to as the Harmony network ("Harmony" and/or "Facility"). Harmony provides long-term care nursing facility services to disabled, insolvent residents of Illinois, such as the Class Representatives in this matter.

7.     Legacy Healthcare Financial Services, LLC is headquartered in Skokie, Illinois. Legacy Healthcare Financial Services, LLC provides financial and business consulting services to a network of skilled nursing home facilities in Illinois, referred to as the Legacy network ("Legacy" and/or "Facility"). Legacy provides long-term care nursing facility services to disabled, insolvent residents of Illinois, such as the Class Representatives in this matter.

8.     Maestro Consulting Services, LLC is headquartered in Lincolnwood, Illinois. Maestro Consulting Services, LLC provides financial and business consulting services to a network of skilled nursing home facilities in Illinois, referred to as the Symphony Post-Acute network ("Symphony" and/or "Facility"). Symphony provides long-term care nursing facility services to disabled, insolvent residents of Illinois, such as the Class Representatives in this matter.

9. Villa Financial Services, LLC is headquartered in Skokie, IL. Villa Financial Services, LLC provides financial and business consulting services to a network of skilled nursing home facilities in Illinois, referred to as the Villa network ("Villa" and/or "Facility"). Villa provides long-term care nursing facility services to disabled, insolvent residents of Illinois, such as the Class Representatives in this matter.

10. Certain individual residents who are approved to receive long-term care Medicaid benefits, who receive nursing facility services and/or supportive living services and/or medical care at a supportive living facility and/or nursing home facility, who are approved Medicaid beneficiaries pursuant to a contract for Medicaid benefits between skilled nursing home facilities and/or supportive living facilities, and Defendant MCOs, who have submitted clean claims for services, and for whom Defendant MCOs have not rendered payment for approved benefits and/or provided for the medical and/or Medicaid services as it is required to pursuant to the Federal Medicaid Act:

a. Francisca Delgado was admitted to an Aperion skilled nursing facility on or about May 20, 2008 ("Delgado" or "Plaintiff"). Delgado suffers from paranoid schizophrenia, type 2 diabetes, and cardiac murmur, among other severe medical conditions. She requires twenty-four hour skilled nursing care at an Aperion facility. Delgado was approved to receive long-term care Medicaid benefits at Aperion. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Aetna Better Health, Delgado submitted claims for necessary nursing facility services/medical expenses to Aetna Better Health. Aetna Better Health has failed to provide to Delgado timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Aetna Better

7

Health for payment. Delgado has a significant outstanding balance owed to Aperion as a result of long-term care and nursing facility services provided to her by Aperion.

b. Winnie Boykin was admitted to a Bria skilled nursing facility on or about February 27, 2013 ("Boykin" or "Plaintiff"). Boykin suffers from chronic obstructive pulmonary disease, blindness out of both eyes, post traumatic seizures, and cognitive social or emotional deficit following cerebral infarction, among other severe medical conditions. She requires twenty-four hour skilled nursing care at a Bria facility. Boykin was approved to receive long-term care Medicaid benefits at Bria. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Meridian Health, Boykin submitted claims for necessary nursing facility services/medical expenses to Meridian Health. Meridian Health has failed to provide to Boykin timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Meridian Health for payment. Boykin has a significant outstanding balance owed to Bria as a result of long-term care and nursing facility services provided to her by Bria.

c. Karen Brown was admitted to a Bria skilled nursing facility on or about July 3, 2015 ("Brown" or "Plaintiff"). Brown suffers from difficulty in walking, history of falling, type 2 diabetes, chronic kidney disease, and cognitive communication deficit, among other severe medical conditions. She requires twenty-four hour skilled nursing care at a Bria facility. Brown was

approved to receive long-term care Medicaid benefits at Bria. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Aetna Better Health, Brown submitted claims for necessary nursing facility services/medical expenses to Aetna Better Health. Aetna Better Health has failed to provide to Brown timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Aetna Better Health for payment. Brown has a significant outstanding balance owed to Bria as a result of long-term care and nursing facility services provided to her by Bria.

d. Joseph Klimas was admitted to a Bria skilled nursing facility on or about September 29, 2015 ("Klimas" or "Plaintiff"). Klimas suffers from schizophrenia, convulsions, osteoarthritis, and muscle weakness, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Bria facility. Klimas was approved to receive long-term care Medicaid benefits at Bria. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Aetna Better Health, Klimas submitted claims for necessary nursing facility services/medical expenses to Aetna Better Health. Aetna Better Health has failed to provide to Klimas timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Aetna Better Health for payment. Klimas has a significant outstanding balance owed to Bria as a result of long-term care and nursing facility services provided to him by Bria.

9

e.  Cynthia Little was admitted to a Bria skilled nursing facility on or about June 6, 2017 ("Little" or "Plaintiff").  Little suffers from chronic kidney disease, diabetes mellitus, major depressive disorder, and hypothyroidism, among other severe medical conditions.  She requires twenty-four hour skilled nursing care at a Bria facility. Little was approved to receive long-term care Medicaid benefits at Bria.  Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Meridian Health, Little submitted claims for necessary nursing facility services/medical expenses to Meridian Health.  Meridian Health has failed to provide to Little timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Meridian Health for payment.  Little has a significant outstanding balance owed to Bria as a result of long-term care and nursing facility services provided to her by Bria.

f.  Sandra McDonald was admitted to a Bria skilled nursing facility on or about November 16, 2014 ("McDonald" or "Plaintiff").  McDonald suffers from schizophrenia, major depressive disorder, osteoporosis, and muscle weakness, among other severe medical conditions.  She requires twenty-four hour skilled nursing care at a Bria facility. McDonald was approved to receive long-term care Medicaid benefits at Bria.  Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Meridian Health, McDonald submitted claims for necessary nursing facility services/medical expenses to Meridian Health.  Meridian Health has failed to provide to McDonald timely payment for nursing facility services and/or

necessary medical care expenses pursuant to clean claims submitted to Meridian Health for payment. McDonald has a significant outstanding balance owed to Bria as a result of long-term care and nursing facility services provided to her by Bria.

g. Wilbert Spencer was admitted to a Bria skilled nursing facility on or about October 11, 2016 ("Spencer" or "Plaintiff"). Spencer suffers from dementia, muscle weakness, and chronic kidney disease, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Bria facility. Spencer was approved to receive long-term care Medicaid benefits at Bria. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Aetna Better Health, Spencer submitted claims for necessary nursing facility services/medical expenses to Aetna Better Health. Aetna Better Health has failed to provide to Spencer timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Aetna Better Health for payment. Spencer has a significant outstanding balance owed to Bria as a result of long-term care and nursing facility services provided to him by Bria.

h. Anthony Caldwell was admitted to a Bria skilled nursing facility on or about June 2, 2017 ("Caldwell" or "Plaintiff"). Caldwell suffers from paranoid schizophrenia and visual loss, right eye, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Bria facility. Caldwell was approved to receive long-term care Medicaid benefits

at Bria. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Molina, Caldwell submitted claims for necessary nursing facility services/medical expenses to Molina. Molina has failed to provide to Caldwell timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Molina for payment. Caldwell has a significant outstanding balance owed to Bria as a result of long-term care and nursing facility services provided to him by Bria.

i. Larry Cummings was admitted to a Bria skilled nursing facility on or about April 9, 2013 ("Cummings" or "Plaintiff"). Cummings suffers from vascular dementia, schizoaffective disorder, muscle weakness, and history of falling, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Bria facility. Cummings was approved to receive long-term care Medicaid benefits at Bria. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Molina, Cummings submitted claims for necessary nursing facility services/medical expenses to Molina. Molina has failed to provide to Cummings timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Molina for payment. Cummings has a significant outstanding balance owed to Bria as a result of long-term care and nursing facility services provided to him by Bria.

j. Steven Ratcliff was admitted to a Bria skilled nursing facility on or about March 27, 2014 ("Ratcliff" or "Plaintiff"). Ratcliff suffers from

12

Alzheimer's disease, schizoaffective disorder, muscle weakness, and difficulty in walking, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Bria facility. Ratcliff was approved to receive long-term care Medicaid benefits at Bria. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Molina, Ratcliff submitted claims for necessary nursing facility services/medical expenses to Molina. Molina has failed to provide to Ratcliff timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Molina for payment. Ratcliff has a significant outstanding balance owed to Bria as a result of long-term care and nursing facility services provided to him by Bria.

k. Orlandus Searcy was admitted to a Bria skilled nursing facility on or about January 11, 2017 ("Searcy" or "Plaintiff"). Searcy suffers from osteoarthritis, amputation of right lower leg, muscle weakness, and schizophrenia, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Bria facility. Searcy was approved to receive long-term care Medicaid benefits at Bria. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Molina, Searcy submitted claims for necessary nursing facility services/medical expenses to Molina. Molina has failed to provide to Searcy timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Molina for payment. Searcy has a

significant outstanding balance owed to Bria as a result of long-term care and nursing facility services provided to him by Bria.

l.   Dwight Akins was admitted to an Everest skilled nursing facility on or about March 13, 2017 ("Akins" or "Plaintiff").   Akins suffers from type 2 diabetes, abnormalities of gait and mobility, and gangrene, among other severe medical conditions.   He requires twenty-four hour skilled nursing care at an Everest facility.   Akins was approved to receive long-term care Medicaid benefits at Everest.   Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with NextLevel, Akins submitted claims for necessary nursing facility services/medical expenses to NextLevel. NextLevel has failed to provide to Akins timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to NextLevel for payment.   Akins has a significant outstanding balance owed to Everest as a result of long-term care and nursing facility services provided to him by Everest.

m.   Donald Murczek was admitted to an Everest skilled nursing facility on or about December 21, 2015 ("Murczek" or "Plaintiff").   Murczek suffers from cognitive communication deficit, muscle weakness, and chronic kidney disease, among other severe medical conditions.   He requires twenty-four hour skilled nursing care at an Everest facility.   Murczek was approved to receive long-term care Medicaid benefits at Everest.   Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Meridian, Murczek submitted claims for necessary nursing facility

14

services/medical expenses to Meridian. Meridian has failed to provide to Murczek timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Meridian for payment. Murczek has a significant outstanding balance owed to Everest as a result of long-term care and nursing facility services provided to him by Everest.

n.  Derrick Griffin was admitted to an Everest skilled nursing facility on or about June 12, 2017 ("Griffin" or "Plaintiff"). Griffin suffers from cognitive communication deficit, muscle weakness, and chronic kidney disease, among other severe medical conditions. He requires twenty-four hour skilled nursing care at an Everest facility. Griffin was approved to receive long-term care Medicaid benefits at Everest. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with CountyCare, Griffin submitted claims for necessary nursing facility services/medical expenses to CountyCare. CountyCare has failed to provide to Griffin timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to CountyCare for payment. Griffin has a significant outstanding balance owed to Everest as a result of long-term care and nursing facility services provided to him by Everest.

o.  Theodore Barnes was admitted to an Everest skilled nursing facility on or about April 3, 2017 ("Barnes" or "Plaintiff"). Barnes suffers from severe medical conditions. He requires twenty-four hour skilled nursing care at an Everest facility. Barnes was approved to receive long-term care Medicaid

15

benefits at Everest. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with NextLevel, Barnes submitted claims for necessary nursing facility services/medical expenses to NextLevel. NextLevel has failed to provide to Barnes timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to NextLevel for payment. Barnes has a significant outstanding balance owed to Everest as a result of long-term care and nursing facility services provided to him by Everest.

p. Hazel Brand was admitted to an Everest skilled nursing facility on or about April 21, 2017 ("Brand" or "Plaintiff"). Brand suffers from viral hepatitis C, among other severe medical conditions. She requires twenty-four hour skilled nursing care at an Everest facility. Brand was approved to receive long-term care Medicaid benefits at Everest. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with CountyCare, Brand submitted claims for necessary nursing facility services/medical expenses to CountyCare. CountyCare has failed to provide to Brand timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to CountyCare for payment. Brand has a significant outstanding balance owed to Everest as a result of long-term care and nursing facility services provided to her by Everest.

q. David Pitre was admitted to an Everest skilled nursing facility on or about 2017 ("Pitre" or "Plaintiff"). Pitre suffers from severe medical conditions. He requires twenty-four hour skilled nursing care at an Everest facility.

Pitre was approved to receive long-term care Medicaid benefits at Everest. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with WellCare, Pitre submitted claims for necessary nursing facility services/medical expenses to WellCare. WellCare has failed to provide to Pitre timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to WellCare for payment. Pitre has a significant outstanding balance owed to Everest as a result of long-term care and nursing facility services provided to him by Everest.

r. Juan Beard was admitted to a Grand Lifestyles supportive living facility on or about August 26, 2016 ("Beard" or "Plaintiff"). Beard suffers from severe medical conditions. He requires medical care and assistance at a Grand Lifestyles supportive living facility. Beard was approved to receive long-term care Medicaid benefits at Grand Lifestyles. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with NextLevel, Beard submitted claims for necessary custodial care expenses under the supportive living program to NextLevel. NextLevel has failed to provide to Beard timely payment for supportive living facility services and custodial care expenses pursuant to clean claims submitted to NextLevel for payment. Beard has a significant outstanding balance owed to Grand Lifestyles as a result of long-term care and services provided to him by Grand Lifestyles.

s. Lee Thirsty was admitted to a Grand Lifestyles supportive living facility on or about May 14, 2014 ("Thirsty" or "Plaintiff"). Thirsty suffers from major depressive disorder, cognitive defects, and traumatic brain injury, among other severe medical conditions. He requires medical care and assistance at a Grand Lifestyles supportive living facility. Thirsty was approved to receive long-term care Medicaid benefits at Grand Lifestyles. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Cigna, for necessary custodial care expenses under the supportive living program to Cigna. Cigna has failed to provide to Thirsty timely payment for supportive living facility services and custodial care expenses pursuant to clean claims submitted to Cigna for payment. Thirsty has a significant outstanding balance owed to Grand Lifestyles as a result of long-term care services provided to him by Grand Lifestyles.

t. Terry Wright was admitted to a Grand Lifestyles supportive living facility on or about April 9, 2014 ("Wright" or "Plaintiff"). Wright suffers from major depressive disorder, among other severe medical conditions. He requires medical care and assistance at a Grand Lifestyles supportive living facility. Thirsty was approved to receive long-term care Medicaid benefits at Grand Lifestyles. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Humana, Wright submitted claims for necessary custodial care expenses under the supportive living program to Humana. Humana has failed to provide to Wright timely payment for supportive living facility services and custodial care expenses pursuant to

clean claims submitted to Humana for payment. Wright has a significant outstanding balance owed to Grand Lifestyles as a result of long-term care services provided to him by Grand Lifestyles.

u.  Trudy Khan was admitted to an ICare skilled nursing facility on or about October 27, 2016 ("Khan" or "Plaintiff"). Khan suffers from schizoaffective disorder, emphysema, and age-related osteoporosis, among other severe medical conditions. She requires twenty-four hour skilled nursing care at an ICare facility. Khan was approved to receive long-term care Medicaid benefits at ICare. Pursuant to Medicaid eligibility and approval, Khan submitted claims for necessary nursing facility services/medical expenses to Community Care Alliance. Community Care Alliance has failed to provide to Khan timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Community Care Alliance for payment. Khan has a significant outstanding balance owed to ICare as a result of long-term care and nursing facility services provided to her by ICare.

v.  Victorina Cruz was admitted to a Harmony skilled nursing facility on or about May 18, 2015 ("Cruz" or "Plaintiff"). Cruz suffers from dementia, chronic obstructive pulmonary disease, and tuberculosis, among other severe medical conditions. She requires twenty-four hour skilled nursing care at a Harmony facility. Cruz was approved to receive long-term care Medicaid benefits at Harmony. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Illinicare, Cruz submitted

claims for necessary nursing facility services/medical expenses to Illinicare. Illinicare has failed to provide to Cruz timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Illinicare for payment. Cruz has a significant outstanding balance owed to Harmony as a result of long-term care and nursing facility services provided to her by Harmony.

w. Miguel Catala was admitted to a Harmony skilled nursing facility on or about August 14, 2012 ("Catala" or "Plaintiff"). Catala suffers from major depressive disorder, cerebrovascular disease, and blindness, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Harmony facility. Catala was approved to receive long-term care Medicaid benefits at Harmony. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Meridian, Catala submitted claims for necessary nursing facility services/medical expenses to Meridian. Meridian has failed to provide to Catala timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Meridian for payment. Catala has a significant outstanding balance owed to Harmony as a result of long-term care and nursing facility services provided to him by Harmony.

x. Claudia Hale was admitted to a Harmony skilled nursing facility on or about November 2, 2010 ("Hale" or "Plaintiff"). Hale suffers from Parkinson's disease, chronic obstructive pulmonary disease, and type 2 diabetes, among other severe medical conditions. She requires twenty-four hour skilled

nursing care at a Harmony facility. Hale was approved to receive long-term care Medicaid benefits at Harmony. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Illinicare, Hale submitted claims for necessary nursing facility services/medical expenses to Illinicare. Illinicare has failed to provide to Hale timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Illinicare for payment. Hale has a significant outstanding balance owed to Harmony as a result of long-term care and nursing facility services provided to her by Harmony.

y. Cecil Gittens was admitted to a Legacy skilled nursing facility on or about October 3, 2014 ("Gittens" or "Plaintiff"). Gittens suffers from dementia, muscle weakness, and heart failure, among other severe medical conditions. She requires twenty-four hour skilled nursing care at a Legacy facility. Gittens was approved to receive long-term care Medicaid benefits at Legacy. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO with Community Care Alliance, Gittens submitted claims for necessary nursing facility services/medical expenses to Community Care Alliance. Community Care Alliance has failed to provide to Gittens timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Community Care Alliance for payment. Gittens has a significant outstanding balance owed to Legacy as a result of long-term care and nursing facility services provided to her by Legacy.

21

z. Harry Mueller was admitted to a Legacy skilled nursing facility on or about September 3, 2010 ("Mueller" or "Plaintiff"). Mueller suffers from schizoaffective disorder, schizophrenia, and chronic total occlusion of coronary artery, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Legacy facility. Mueller was approved to receive long-term care Medicaid benefits at Legacy. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with BCBS, Mueller submitted claims for necessary nursing facility services/medical expenses to BCBS. BCBS has failed to provide to Mueller timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to BCBS for payment. Mueller has a significant outstanding balance owed to Legacy as a result of long-term care and nursing facility services provided to him by Legacy.

aa. Glenda Buchholtz was admitted to a Legacy skilled nursing facility on or about March 10, 2017 ("Buchholtz" or "Plaintiff"). Buchholtz suffers from schizophrenia and end stage renal disease, among other severe medical conditions. She requires twenty-four hour skilled nursing care at a Legacy facility. Buchholtz was approved to receive long-term care Medicaid benefits at Legacy. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Aetna Better Health, Buchholtz submitted claims for necessary nursing facility services/medical expenses to Aetna Better Health. Aetna Better Health has failed to provide to Buchholtz timely payment for nursing facility services and/or necessary medical care

expenses pursuant to clean claims submitted to Aetna Better Health for payment. Buchholtz has a significant outstanding balance owed to Legacy as a result of long-term care and nursing facility services provided to her by Legacy.

bb. Barbara Craddock was admitted to a Symphony skilled nursing facility on or about July 16, 2016 ("Craddock" or "Plaintiff"). Craddock suffers from end stage renal disease, type 2 diabetes, and major depressive disorder, among other severe medical conditions. She requires twenty-four hour skilled nursing care at a Symphony facility. Craddock was approved to receive long-term care Medicaid benefits at Symphony. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Meridian, Craddock submitted claims for necessary nursing facility services/medical expenses to Meridian. Meridian has failed to provide to Craddock timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Meridian for payment. Craddock has a significant outstanding balance owed to Symphony as a result of long-term care and nursing facility services provided to her by Symphony.

cc. Daryl Jones was admitted to a Symphony skilled nursing facility on or about September 25, 2015 ("Jones" or "Plaintiff"). Jones suffers from schizoaffective disorder, chronic kidney disease, and convulsions, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Symphony facility. Jones was approved to receive long-

23

term care Medicaid benefits at Symphony. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with BCBS, Jones submitted claims for necessary nursing facility services/medical expenses to BCBS. BCBS has failed to provide to Jones timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to BCBS for payment. Jones has a significant outstanding balance owed to Symphony as a result of long-term care and nursing facility services provided to him by Symphony.

dd. Crystal Garrett was admitted to a Symphony skilled nursing facility on or about September 20, 2017 ("Garrett" or "Plaintiff"). Garrett suffers from cognitive communication deficit, muscle weakness, and end stage renal disease, among other severe medical conditions. She requires twenty-four hour skilled nursing care at a Symphony facility. Garrett was approved to receive long-term care Medicaid benefits at Symphony. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with BCBS, Garrett submitted claims for necessary nursing facility services/medical expenses to BCBS. BCBS has failed to provide to Garrett timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to BCBS for payment. Garrett has a significant outstanding balance owed to Symphony as a result of long-term care and nursing facility services provided to her by Symphony.

ee. Kirk Lis was admitted to a Symphony skilled nursing facility on or about July 12, 2016 ("Lis" or "Plaintiff"). Lis suffers from atherosclerotic heart

disease, type 2 diabetes, and history of falling, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Symphony facility. Lis was approved to receive long-term care Medicaid benefits at Symphony. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Meridian, Lis submitted claims for necessary nursing facility services/medical expenses to Meridian. Meridian has failed to provide to Lis timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Meridian for payment. Lis has a significant outstanding balance owed to Symphony as a result of long-term care and nursing facility services provided to him by Symphony.

ff. Dannah Norwood was admitted to a Symphony skilled nursing facility on or about May 14, 2013 ("Norwood" or "Plaintiff"). Norwood suffers from cognitive communication deficit, chronic obstructive pulmonary disease, and schizophrenia, among other severe medical conditions. She requires twenty-four hour skilled nursing care at a Symphony facility. Norwood was approved to receive long-term care Medicaid benefits at Symphony. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with CountyCare, Norwood submitted claims for necessary nursing facility services/medical expenses to CountyCare. CountyCare has failed to provide to Norwood timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to CountyCare for payment. Norwood has a significant outstanding balance

owed to Symphony as a result of long-term care and nursing facility services provided to her by Symphony.

gg. Idella Adell was admitted to a Villa skilled nursing facility on or about November 19, 2013 ("Adell" or "Plaintiff"). Adell suffers from chronic kidney disease, dementia, and neuromuscular dysfunction of bladder, among other severe medical conditions. She requires twenty-four hour skilled nursing care at a Villa facility. Adell was approved to receive long-term care Medicaid benefits at Villa. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Meridian, Adell submitted claims for necessary nursing facility services/medical expenses to Meridian. Meridian has failed to provide to Adell timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Meridian for payment. Adell has a significant outstanding balance owed to Villa as a result of long-term care and nursing facility services provided to her by Villa.

hh. Helen Emerson was admitted to a Villa skilled nursing facility on or about January 9, 2017 ("Emerson" or "Plaintiff"). Emerson suffers from age-related physical debility and carcinoma, among other severe medical conditions. She requires twenty-four hour skilled nursing care at a Villa facility. Emerson was approved to receive long-term care Medicaid benefits at Villa. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with BCBS, Emerson submitted claims for necessary nursing faciliUty services/medical expenses to BCBS. BCBS has failed to

provide to Emerson timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to BCBS for payment. Emerson has a significant outstanding balance owed to Villa as a result of long-term care and nursing facility services provided to her by Villa.

ii. Sophie Krasula was admitted to a Villa skilled nursing facility on or about March 25, 2009 ("Krasula" or "Plaintiff"). Krasula suffers from dementia, difficulty in walking, and convulsions, among other severe medical conditions. She requires twenty-four hour skilled nursing care at a Villa facility. Krasula was approved to receive long-term care Medicaid benefits at Villa. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Meridian, Krasula submitted claims for necessary nursing facility services/medical expenses to Meridian. Meridian has failed to provide to Krasula timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Meridian for payment. Krasula has a significant outstanding balance owed to Villa as a result of long-term care and nursing facility services provided to her by Villa.

jj. Johnnie King was admitted to a Villa skilled nursing facility on or about April 6, 2016 ("King" or "Plaintiff"). King suffers from dementia, type 2 diabetes, and chronic ischemic heart disease, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Villa facility. King was approved to receive long-term care Medicaid benefits at

Villa. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Meridian, King submitted claims for necessary nursing facility services/medical expenses to Meridian. Meridian has failed to provide to King timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Meridian for payment. King has a significant outstanding balance owed to Villa as a result of long-term care and nursing facility services provided to him by Villa.

kk. James Hubbard was admitted to a Villa skilled nursing facility on or about April 6, 2016 ("Hubbard" or "Plaintiff"). Hubbard suffers from acute kidney failure and cerebral infarction, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Villa facility. Hubbard was approved to receive long-term care Medicaid benefits at Villa. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Aetna Better Health, Hubbard submitted claims for necessary nursing facility services/medical expenses to Aetna Better Health. Aetna Better Health has failed to provide to Hubbard timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Aetna Better Health for payment. Hubbard has a significant outstanding balance owed to Villa as a result of long-term care and nursing facility services provided to him by Villa.

ll. Luvenia Stevenson was admitted to a Villa skilled nursing facility on or about January 23, 2017 ("Stevenson" or "Plaintiff"). Stevenson suffers

from dementia and type 2 diabetes, among other severe medical conditions. She requires twenty-four hour skilled nursing care at a Villa facility. Stevenson was approved to receive long-term care Medicaid benefits at Villa. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Meridian, Stevenson submitted claims for necessary nursing facility services/medical expenses to Meridian. Meridian has failed to provide to Stevenson timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Meridian for payment. Stevenson has a significant outstanding balance owed to Villa as a result of long-term care and nursing facility services provided to her by Villa.

11. Aetna Medicaid Administrators, LLC, d/b/a Aetna Better Health, Inc. ("Aetna Better Health" or "Defendant MCO") is a Connecticut corporation doing business in the State of Illinois. Aetna Better Health has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

12. Meridian Health Plan, Inc. ("Meridian Health Plan" or "Defendant MCO") is Michigan corporation doing business in the State of Illinois. Meridian Health Plan has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

13. Community Care Alliance of Illinois, LLC. ("Community Care Alliance" or "Defendant MCO") is an Illinois Corporation doing business in the State of Illinois. Community Care

29

Alliance has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

14.     Healthcare Service Corporation, d/b/a Blue Cross Blue Shield of Illinois ("BCBS" or "Defendant MCO") is an Illinois Corporation doing business in the State of Illinois.  BCBS has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

15.     Illinicare Health Plan, Inc. ("Illinicare" or "Defendant MCO") is an Illinois Corporation doing business in the State of Illinois.  Illinicare has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

16.     Cook County is a municipal government within the State of Illinois.  Cook County Health and Hospitals System is an agency of the government of Cook County, Illinois.  Cook County Health and Hospitals Systems, through CountyCare Health Plan, ("CountyCare" or "Defendant MCO"), has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

17.     NextLevel Health Partners, Inc. ("NextLevel" or "Defendant MCO") is an Illinois Corporation doing business in the State of Illinois.  NextLevel has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

18. WellCare Health Plans, Inc. ("WellCare" or "Defendant MCO") is Florida Corporation doing business in the State of Illinois. WellCare has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

19. Cigna Corporation, d/b/a Cigna-HealthSpring CarePlan of Illinois ("Cigna" or "Defendant MCO") is Delaware Corporation doing business in the State of Illinois. Cigna has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

20. Humana, Inc. ("Humana" or "Defendant MCO") is Kentucky Corporation doing business in the State of Illinois. Humana has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

21. Molina Healthcare of Illinois, Inc. ("Molina" or "Defendant MCO") is an Illinois Corporation doing business in the State of Illinois. Molina has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

22. The Illinois Department of Healthcare and Family Services ("HFS" or "Defendant") is an Illinois state agency that provides Medicaid services to enrollees in Illinois. HFS is the sole state agency administering Medicaid in the State of Illinois.

23.     The Felicia F. Norwood, is the Director of HFS ("Norwood" or "Defendant"), and at all times material to this Complaint acted under color of state law in administering the regulations, customs, policies, and practices material herein.  She is sued in her official capacity only.

## IV. CLASS ALLEGATIONS

### A.     COMMON QUESTIONS OF LAW AND FACT.

The named Plaintiffs are members of the class they seek to represent.  The class consists of residents/Medicaid beneficiaries residing at supportive living or skilled nursing facilities, who were provided twenty-four hour skilled nursing care and supportive living services.  All Plaintiffs were insolvent and/or medically needy and/or disabled and entitled to receive Medicaid benefits pursuant to federal and state law and are "qualified individuals with a disability," as defined under the ADA, 42 U.S.C. § 12132 *et. seq*. and the Rehabilitation Act, 28 C.F.R. § 35.130 *et. seq*.  The Defendants violated Plaintiffs' rights by not providing for nursing facility services for eligible and approved qualified residents residing at supportive living and/or nursing home facilities.  These actions by Defendants violate the Federal Medicaid Act, 42 U.S.C. §§ 1396a(a)(8) 1396a(a)(10).

The Plaintiffs seek an Order from the Court providing injunctive relief by issuing an Order from the Court requiring the Defendants to provide for supportive living and/or nursing facility services for all approved Medicaid claims submitted by Plaintiffs pursuant to 42 U.S.C. §§ 1396(a), 1902(a)(37)(A).

### B.     TYPICALITY OF CLAIMS AND RELIEF SOUGHT

The claims of the named Plaintiffs and the relief necessary to remedy the claims of the named Plaintiffs are the same as the claims of the putative class members and the relief necessary to remedy the claims of the putative class members.  The Plaintiffs seek an Order from the Court providing injunctive relief by issuing an Order from the Court requiring the Defendant to provide

for nursing facility services for all approved Medicaid claims submitted by Plaintiffs pursuant to 42 U.S.C. §§ 1396(a), 1902(a)(37)(A).

### C.    NUMEROSITY AND IMPRACTICABILITY OF JOINDER

The class which Plaintiffs seek to represent are too numerous to make joinder practicable.

### D.    ADEQUACY OF REPRESENTATION

The class' representatives' interests are coextensive with those of the putative class in that each seeks to remedy Defendants' violations herein stated.  The class representatives are able and willing to represent the putative class fairly and vigorously as they pursue their common claims through this action.  Plaintiffs' counsel is also qualified, experienced, and able to conduct the litigation and to meet the time and fiscal demands required to litigate a class action of this size and complexity.  The combined interest, experience and resources of the named Plaintiffs and their counsel to litigate competently the individual and class' claims satisfy the adequacy of representation requirement.

### E.    EFFICIENCY OF CLASS PROSECUTION OF COMMON CLAIMS

Certification of class of similarly situated Medicaid beneficiaries, who were adversely treated as stated above under the Act is the most efficient and economical means of resolving the questions of law and fact that are common to the individual claims of the named Plaintiffs and the putative class.  The individual claims of the named Plaintiffs and those of the putative class require resolution of the common question of whether the Defendants have engaged in adverse treatment of Medicaid beneficiaries.  The named Plaintiffs seek for themselves and the putative class remedies to eliminate the Defendants' violations.  The named Plaintiffs have standing to seek such relief. Without class certification, the same evidence and issues would be subject to repeated re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications

and conflicting obligations. Certification of the class of individuals as defined by the Class Definition herein, as those affected by these common questions of law and fact, is the most efficient and judicial means of presenting the evidence and arguments necessary to resolve such questions for the named Plaintiffs, the putative class, and the Defendants.

### F.       REQUIREMENTS OF RULE 23(b)(2)

The Defendants have acted on grounds generally applicable to the class by violating the rights of the Plaintiff residents/Medicaid beneficiaries as stated herein.  The Defendants' actions have violated federal and state laws.   Therefore, the Defendants' adverse actions have made temporary and permanent injunctive relief and corresponding declaratory relief appropriate with respect to the named Plaintiffs and putative class as a whole. Injunctive and declaratory relief is the predominate relief sought.  Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the existence of the denial of benefits and the failure to comply with Federal regulations.  Such relief is the factual and legal predicate for the named Plaintiffs' and class members' entitlement to monetary and non-monetary remedies for losses caused by such treatment.  The Plaintiff residents/Medicaid beneficiaries and the similarly situated individuals are similar because their rights are the same, their classifications are the same, and their harm is the same.  The Plaintiffs and the similarly situated individuals meet the collective action requirements of commonality, typicality and numerosity.

### G.       CLASS' DEFINITION

The class consists of:

All disabled and/or medically needy persons who require medical care at a  Bria, Aperion, ICare, Legacy, Harmony, Symphony, Villa, Everest, and/or Grand Lifestyles network of supportive living and/or skilled nursing facilities, who are eligible for and approved to receive Medicaid benefits pursuant to Medicaid eligibility and approval and/or a contract with one or more Defendant MCOs, and who have submitted Medicaid claims to any of the Defendant MCOs and have failed to receive payment for said claim(s) pursuant to the

Defendant MCOs' requirement to provide for claims payment procedures which ensure that 90 per centum of claims for payment made for services covered under the plan are paid within 30 days of the date of receipt of such claims and that 99 per centum of such claims are paid within 90 days of the date of the receipt of such claims.

## V. STATEMENT OF FACTS

1. The named Plaintiffs are members of the class they seek to represent. The class consists of supportive living and/or nursing facility residents residing at facilities, who were provided twenty-four hour skilled nursing care and/or supportive living services, and who were insolvent and/or disabled, and entitled to receive Medicaid benefits pursuant to federal and state law and are "qualified individuals with a disability," as defined under the ADA, 42 U.S.C. § 12132 et. seq. and 28 C.F.R. § 35.130 *et. seq.*

2. The Illinois State Medicaid Plan operates under the statutory authority of Title XIX of the Social Security Act Medical Assistance Program.

3. As a condition of receiving federal funds, Defendant HFS is required to administer the Medicaid program in the state of Illinois in compliance with the Federal Medicaid Act, 42 U.S.C. § 1396a(a)(8), and implementing regulations.

4. Defendant HFS contracts with Defendant MCOs to provide health care services for patients who qualify for Medicaid in the state of Illinois.

5. The actions of the MCOs as alleged herein are imputed to Defendant HFS.

6. The Defendant MCOs acted under color of state law for purposes of 42 U.S.C. § 1983 as Defendant MCOs are willing participants in joint action with Defendant HFS.

7. Defendant MCOs and Defendant HFS jointly acted and/or conspired against Plaintiffs by failing to comply with the Federal Medicaid Act with respect to submitting to Plaintiffs Medicaid benefits for which they are eligible for and are approved to receive.

8. Defendant MCOs acted, pursuant to its contract with Defendant HFS, as the state actor in providing Medicaid benefits to Plaintiffs.

9. Pursuant to 42 U.S.C. § 1396u-2 and 42 C.F.R. § 438.10 states may choose to contract with MCOs in the administration of the state's Medicaid program.

10. Pursuant to 42 U.S.C. §§ 1396(a), 1902(a)(37)(A), the MCOs are required to provide for claims payment procedures which "ensure that 90 per centum of claims for payment made for services covered under the plan…are paid within 30 days of the date of receipt of such claims and that 99 per centum of such claims are paid within 90 days of the date of the receipt of such claims."

11. Defendant MCOs have failed to reimburse the Plaintiff residents/Medicaid beneficiaries within the time periods mandated by federal law.

12. As a direct result of the MCOs failure to reimburse Medicaid claims to the supportive living and/or skilled nursing facilities, the Plaintiff residents/Medicaid beneficiaries have failed to receive public assistance and necessary medical benefits to which they are entitled pursuant to federal law.

13. Defendant HFS and Defendant MCOs have failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

14. As a direct result of the Defendant's failure to timely process their Medicaid benefits and claims, Plaintiff residents/Medicaid beneficiaries have failed to receive supportive living and/or nursing facility services provided by Defendants, which they are entitled pursuant to federal law.

15.    In light of the Defendants' failure to comply with federal and state Medicaid laws, the Plaintiff residents/Medicaid beneficiaries have been unable to pay for their room, board, care and services as Defendants have failed to provide the medical benefits Plaintiff residents/Medicaid beneficiaries are entitled to.

16.    Such actions by the Defendants places the Plaintiff residents/Medicaid beneficiaries at risk of being discharged from the supportive living and/or nursing home facility where they receive medical care and supportive living and/or nursing facility services, and jeopardizes their health, safety, and well-being.

17.    All of the Plaintiff residents/Medicaid beneficiaries are "qualified individuals with a disability," as defined under the ADA, 42 U.S.C. § 12132 *et. seq.,* the Rehabilitation Act of 1973, 29 U.S.C. § 705 *et. seq.*, and 28 C.F.R. § 35.130 *et. seq.*

18.    The Defendants' failure to afford the Plaintiff residents/Medicaid beneficiaries public benefits and services, to which they are entitled under federal law, and failure to grant the Plaintiff residents/Medicaid beneficiaries Medicaid benefits as a reasonable accommodation, constitutes actual or predictable discrimination in violation of the ADA, 42 U.S.C. § 12132 *et seq.,* the Rehabilitation Act of 1973, 29 U.S.C. § 705 *et. seq.*, and 28 C.F.R. § 35.130 e*t seq.*

19.    By failing to pay for services rendered to persons eligible for and approved to receive Medicaid benefits, the Defendants have failed to comply with federal law, as preempted by the Supremacy Clause of the United States Constitution, Article VI. The burden placed on the Defendants, should the Court grant the relief requested in this action, is that Defendants will be required to comply with federal Medicaid laws and provide for supportive living and/or nursing facility services to Plaintiffs. The Defendants stand to suffer diminutive, if any, burden by the

timely rendering of payment of Plaintiffs' Medicaid claims to Plaintiff residents/Medicaid beneficiaries.

## VI. CAUSES OF ACTION

### COUNT ONE  - DECLARATORY JUDGMENT RELIEF

20.     Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

21.     Pursuant to 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure, Plaintiffs seek a declaration by this Court.

22.     It is well settled that the district court's exercise of discretion in a declaratory judgment action should be informed by a number of prudential factors, including: (1) considerations of practicality and efficient judicial administration; (2) the functions and limitations of the federal judicial power; (3) traditional principles of equity, comity, and federalism; (4) Eleventh Amendment and other constitutional concerns; and (5) the public interest. *Smith & Usaha, supra* note 2, at 116, *citing* . *Wilton v. Seven Falls Company, 515 U.S. 288 (1995); Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Rickover*, 369 U.S. 111 at 112-13; *Public Service Commission of Utah v. Wycoff Company*, 344 U.S. 237, 243-47 (1952). Perhaps the most important factors are whether a declaratory judgment will serve a useful purpose and resolve the controversy between the parties. *Smith & Usaha, supra not*e 2, at 116 (collecting cases); *Wilton*, 515 U.S. at 288; *Green v. Mansour*, 474 U.S. 64, 74 (1985); *Rickover*, 369 U.S. 111 at 112-13*G*; *Wycoff*, 344 U.S. at 244.

23.     The Illinois State Medicaid Plan operates under the statutory authority of Title XIX of the Social Security Act Medical Assistance Program.

24.     As a condition of receiving federal funds, Defendant HFS is required to administer the Medicaid program in the state of Illinois in compliance with the Federal Medicaid Act, 42 U.S.C. § 1396a(a)(8), and implementing regulations.

25.     Defendant HFS contract with Defendant MCOs to provide health care services for patients who qualify for Medicaid in the state of Illinois.

26.     The actions of the MCOs as alleged herein are imputed to Defendant HFS.

27.     Defendant MCOs and Defendant HFS jointly acted and/or conspired against Plaintiffs by failing to comply with the Federal Medicaid Act with respect to submitting to Plaintiffs Medicaid benefits for which they are eligible for and are approved to receive.

28.     Pursuant to 42 U.S.C. § 1396u-2 and 42 C.F.R. § 438.10 states may choose to contract with MCOs in the administration of the state's Medicaid program.

29.     Pursuant to 42 U.S.C. §§ 1396(a), 1902(a)(37)(A), the MCOs are required to provide for claims payment procedures which "ensure that 90 per centum of claims for payment made for services covered under the plan…are paid within 30 days of the date of receipt of such claims and that 99 per centum of such claims are paid within 90 days of the date of the receipt of such claims."

30.     Defendant MCOs have failed to reimburse the Plaintiff residents/Medicaid beneficiaries within the time periods mandated by federal law.

31.     As a direct result of the MCOs failure to reimburse Medicaid claims to the supportive living and/or skilled nursing facilities, the Plaintiff residents/Medicaid beneficiaries have failed to receive public assistance and necessary medical benefits to which they are entitled pursuant to federal law.

32.     Defendant HFS and Defendant MCOs have failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

33.     As a direct result of the Defendant's failure to timely process their Medicaid benefits and claims, Plaintiff residents/Medicaid beneficiaries have failed to receive supportive living and/or nursing facility services provided by Defendants, which they are entitled pursuant to federal law.

34.     In light of the Defendants' failure to comply with federal and state Medicaid laws, the Plaintiff residents/Medicaid beneficiaries have been unable to pay for their room, board, care and services as Defendants have failed to provide the medical benefits Plaintiff residents/Medicaid beneficiaries are entitled to.

35.     Such actions by the Defendants places the Plaintiff residents/Medicaid beneficiaries at risk of being discharged from the supportive living and/or nursing home facility where they receive medical care and nursing facility services, and jeopardizes their health, safety, and well-being.

36.     All of the Plaintiff residents/Medicaid beneficiaries are "qualified individuals with a disability," as defined under the ADA, 42 U.S.C. § 12132 *et. seq.,* the Rehabilitation Act of 1973, 29 U.S.C. § 705 *et. seq.*, and 28 C.F.R. § 35.130 *et. seq.*

37.     The Defendants' failure to afford the Plaintiff residents/Medicaid beneficiaries public benefits and services, to which they are entitled under federal law, and failure to grant the Plaintiff residents/Medicaid beneficiaries Medicaid benefits as a reasonable accommodation,

constitutes actual or predictable discrimination in violation of the ADA, 42 U.S.C. § 12132 *et seq.,* the Rehabilitation Act of 1973, 29 U.S.C. § 705 *et. seq.*, and 28 C.F.R. § 35.130 e*t seq.*

38.    By failing to pay for services rendered to persons eligible for and approved to receive Medicaid benefits, the Defendants have failed to comply with federal law, as preempted by the Supremacy Clause of the United States Constitution, Article VI. The burden placed on the Defendants, should the Court grant the relief requested in this action, is that Defendants will be required to comply with federal Medicaid laws and provide for supportive living and/or nursing facility services to Plaintiffs. The Defendants stand to suffer diminutive, if any, burden by the timely rendering of payment of Plaintiffs' Medicaid claims to Plaintiff residents/Medicaid beneficiaries.

39.    Plaintiffs seek a declaratory judgment from this Court declaring that Defendants are in violation of the Federal Medicaid Act by failing to timely submit to Plaintiff residents/Medicaid beneficiaries medical benefits as required under 42 U.S.C. §§ 1396(a), 1902(a)(37)(A) and for its failure to ensure that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

## **COUNT TWO - VIOLATION OF THE FEDERAL MEDICAID ACT'S MEDICAL ASSISTANCE, AND NURSING FACILITY SERVICES MANDATE**

40.    The Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

41.    In violation of the medical assistance and nursing facility services provisions of the Medicaid Act, 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(A), the Defendants, while acting under the color of law, have failed to provide the Plaintiff residents/Medicaid beneficiaries with

supportive living and/or nursing facility services necessary for the health and welfare of these disabled Plaintiffs.

42.     The Defendants' violations, which have been repeated and knowing, entitle the Plaintiffs to relief under 42 U.S.C. § 1983.

### COUNT THREE - VIOLATION OF THE FEDERAL MEDICAID ACT'S REASONABLE PROMPTNESS REQUIREMENT

43.     The Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

44.     The Plaintiffs residents/Medicaid beneficiaries are all Medicaid-eligible individuals who require supportive living and/or nursing facility services and reside in Illinois.

45.     The Defendants are engaged in the repeated, ongoing failure to arrange and provide medical assistance and supportive living and/or nursing facility services despite the fact that medical assistance and supportive living and/or nursing facility services are medically necessary for all named Plaintiffs.

46.     In violation of 42 U.S.C. § 1396a(a)(8) of the Federal Medicaid Act, the Defendants, while acting under the color of law, failed to provide services to the Plaintiffs with "…reasonable promptness…". Furthermore, the Defendant is required to administer the Medicaid program in compliance with 42 C.F.R. §435.930 (requiring applicants be afforded Medicaid benefits without any delay).

47.      The Defendants' violations, which have been repeated and knowing, entitle the Plaintiffs to relief under 42 U.S.C. § 1983.

### COUNT FOUR – VIOLATION OF THE "AMERICANS WITH DISABILITIES ACT" ("ADA"), 42 U.S.C. §12132

48.     The Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

49.     The Defendants have failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

50.     All of the Plaintiffs are "qualified individuals with a disability," as defined under the ADA, 42 U.S.C. § 12132 *et. seq.* and 28 C.F.R. § 35.130 *et. seq.*

51.     The Defendant's failure to afford the Plaintiffs public benefits and services, to which they are entitled under federal law, and failure to grant the residents Medicaid benefits as a reasonable accommodation, constitutes actual or predictable discrimination in violation of the ADA, 42 U.S.C. § 12132 *et seq.* and 28 C.F.R. § 35.130 *et seq.*

52.     As a consequence of' Defendant's actions as described herein, Plaintiffs have suffered damages, including compensatory, mental anguish and other damages.

<u>**COUNT FIVE – VIOLATION OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794**</u>

53.     The Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

54.     Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits public entities and recipients of federal funds from discriminating against any individual by reason of disability. Policies, practices, and procedures that have the effects of unjustifiably denying access to public services and benefits to persons with disabilities constitute prohibited discrimination under the Rehabilitation Act.

55.     Defendants are recipients of federal funds under the Rehabilitation Act. The Plaintiffs are qualified individuals with a disability under Section 504 of the Rehabilitation Act.

56.     The actions by Defendants constitute unlawful discrimination under 29 U.S.C. § 794(a), violate the mandate that no qualified handicapped person should be denied benefits on the

basis of handicap, and violate the regulations implementing this statutory prohibition. 28 C.R.R. § 41.51(d).

57.     Plaintiffs are individuals who require supportive living and/or skilled nursing care for their health, welfare, and survival. The Defendant's failure to provide supportive living and/or nursing facility services to Plaintiffs violates § 504 of the Rehabilitation act of 1973 and its implementing regulations.

58.     As a consequence of' Defendant's actions as described herein, Plaintiffs have suffered damages, including compensatory, mental anguish and other damages.

## COUNT SIX – VIOLATION OF DUE PROCESS
## AND EQUAL PROTECTION (42 U.S.C. § 1983)

59.     The Plaintiffs incorporate all paragraphs set out above as if fully set out herein

60.     Defendants deprived Plaintiffs of their property interest to which Plaintiffs have a legitimate claim of entitlement. The procedures implemented by Defendants to deprive Plaintiffs of their property interest are constitutionally insufficient.

61.     To comply with the procedural Due Process guarantees under the United States Constitution, the Defendants must provide the Plaintiffs with a meaningful notice that apprises them of the reasons for a denial of assistance, the authority for the denial, and an opportunity to appeal such denial of assistance.

62.     Plaintiffs are entitled to a hearing when such benefits are denied to them, or sought to be terminated, or recouped, or sought to be recouped, for the reasons enumerated under the Federal Medicaid act.

63.     Defendants' failure to allow for a sufficient hearing process for with respect to Plaintiffs' interest in Medicaid benefits, does not adequately apprise Plaintiffs of the actions against them, or of the reasons for actions taken against them, or the authority for the actions

taken against them. Such actions by Defendants are inconsistent with the Due Process Clause of the United States Constitution, Amendment XIV and the Medicaid Act, Title XIX of the Social Security Act, Title 42 § 1396a, et seq., and its implementing regulations.

64. Defendants have deprived Plaintiff of his property interests under color of law without due process of law in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

65. Plaintiffs' property interests are of a type protected by the Fifth and Fourteenth Amendments to the United States Constitution.

66. Plaintiffs possess a legitimate claim of entitlement and justifiable expectation in their property interests.

67. The Defendants acted wilfully, knowingly, and purposefully with the specific intent to deprive Plaintiffs of their rights, privileges, and immunities secured by the Constitution and laws by the Fourteenth Amendment to the Constitution of the United States and by 42 U.S.C. §1983.

68. The above acts were committed under color of state law by the Defendants. Said acts were committed by the Defendants by and through representatives of the Defendants acting under color of state law and in their official capacities pursuant to the statutes, ordinances, laws and policies of the Defendants.

### COUNT SEVEN – TEMPORARY AND PERMANENT INJUNCTION

69. The Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

70. The above acts were committed under color of state law by the Defendant. Said acts were committed by and through representatives of the Defendants acting in their official capacities pursuant to the statutes, ordinances, laws and policies of the Defendants.

71. The Plaintiffs demand temporary and permanent injunctive relief requiring that the Defendant provide for supportive living and/or nursing facility services for approved Medicaid benefits and claims.

72. Issue an Order requiring the Defendants to automatically provide for nursing facility services to Plaintiffs.

## VII. REQUESTS FOR RELIEF

1. Certify this case to proceed as a class action under Fed. R. Civ. P. 23(b)(2);

2. Issue a Declaratory Judgment in favor of the Plaintiffs and the Class, requiring Defendant to adhere to the requirements of the Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act;

3. Declare unlawful the Defendant's failure to arrange for medical assistance and/or supportive living and/or nursing facility services to the Plaintiffs and Class;

4. Issue Preliminary and Permanent Injunctive relief enjoining the Defendant from subjecting the Plaintiffs and the Class to practices that violate their rights under the Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act;

5. Issue Preliminary and Permanent Injunctive relief requiring the Defendant to arrange for medical assistance and/or supportive living and/or nursing facility services to the Plaintiffs and Class pursuant to the requirements of 42 U.S.C. §§ 1396(a), 1902(a)(37)(A);

6. Award Plaintiffs and the Class the costs of this action, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205; § 504 of the Rehabilitation Act, and 42 U.S.C. § 1988; and,

7. Award such other relief as the Court deems just and appropriate, including, but not limited to, compensatory and punitive damages, interest, expenses and costs.

**PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY.**

                                                Respectfully submitted,

                                                /s/ Katie Z. Van Lake
                                                ARDC# 6292120
                                                SB2, Inc.
                                                1426 N. 3rd Street, Suite 200
                                                Harrisburg, PA 17102
                                                Telephone: (516) 509-1289
                                                Facsimile: (717) 909-5925
                                                kvanlake@sb2inc.com
                                                *Attorney for Plaintiffs*