CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3076

BRIA HEALTH SERVICES, LLC, et al., as authorized representatives of Winnie Boykin, et al.,

*Plaintiffs-Appellants*,

*v.*

THERESA A. EAGLESON, in her official capacity as the Director of the Illinois Department of Healthcare and Family Services, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-8920 — **Charles R. Norgle**, *Judge*.

ARGUED SEPTEMBER 19, 2019 — DECIDED FEBRUARY 11, 2020

Before SYKES, HAMILTON, and BRENNAN, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Plaintiffs are consultants who provide services to nursing homes and long-term care facilities. They say they are bringing this suit on behalf of seriously ill nursing home residents receiving care under Medicaid. The residents, however, are not parties to this suit, and it seems

unlikely that they would benefit at all if plaintiffs win. By all appearances, plaintiffs have brought this suit in an effort to push the State of Illinois and its Medicaid contractors to pay outstanding bills owed to the consultants' clients.

Third parties can bring claims on behalf of others under some circumstances. Guardians, next friends, and associations, for example, can have representative standing. This case does not involve such established standing doctrines. Instead, plaintiffs rely on a Medicaid regulation. As we read that regulation, however, it does not permit authorized representatives to bring civil lawsuits on behalf of Medicaid beneficiaries. We affirm the district court's dismissal for lack of standing and thus lack of subject matter jurisdiction.

I. *Facts and Procedural Background*

The Medicaid program—established under Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq.—is a cooperative arrangement in which the federal government gives financial assistance to states to provide medical services to poor residents. See, e.g., *National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 541–42 (2012). To participate in the program, states must comply with detailed statutory and regulatory requirements. Among these requirements, states must "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8). States must also ensure that certain medical assistance is available to all eligible beneficiaries. § 1396a(a)(10).

Illinois administers its Medicaid program through its Department of Healthcare and Family Services (HFS). At issue

here are the State's managed care programs, in which HFS contracts with Medicaid managed care organizations (MCOs) to deliver Medicaid health benefits to beneficiaries. The State pays the MCOs a flat fee per patient per month, and the MCOs pay providers for services rendered to Medicaid beneficiaries. See generally 305 ILCS 5/5-30.1.

Plaintiffs in this case are consultants who offer financial and business services to nursing home and supportive living facilities in Illinois. They have sued HFS, the HFS director, and a number of MCOs. Plaintiffs say they are bringing these claims on behalf of a class of nursing home residents entitled to Medicaid benefits. They seek various forms of relief for alleged violations of Title XIX of the Social Security Act; Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 et seq.; the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

Plaintiffs allege that the MCOs have failed to process timely payments for claims submitted by the nursing homes—the plaintiff-consultants' clients—to the MCOs. This, the consultants argue, constitutes a failure to provide the medical assistance required by 42 U.S.C. § 1396a(a)(10).[1] Because the nursing homes have not been paid for services rendered, the consultants say, the resident-beneficiaries are at risk of being discharged from the facilities. This jeopardizes the resident-beneficiaries' health, safety, and well-being, and

---

[1] The statutory definitions of some Medicaid terms differ from their everyday meanings. "Medical assistance" is defined by statute as "payment of part or all of the cost of [covered] care and services or the care and services themselves, or both." 42 U.S.C. § 1396d(a).

causes mental anguish. The consultants' claims under the ADA, the Rehabilitation Act, and the Constitution are all based on the same alleged denial of benefits.

The plaintiff-consultants say that they have been authorized to bring these claims by Medicaid beneficiaries residing in their clients' nursing homes. Each resident has allegedly filled out a form designating a consultant as authorized representative, authorizing "action as necessary to establish [] eligibility for Medicaid," agreeing that legal proceedings brought in regard to Medicaid eligibility may be brought in the name of the resident or in that of the facility, and waiving "potential or actual conflicts of interest."[2]

The district court dismissed the case under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. It determined that the regulation cited by plaintiffs does not permit authorized representatives to bring civil lawsuits on behalf of Medicaid beneficiaries so that the consultant-plaintiffs lacked standing.

II. *Analysis*

We review *de novo* a district court's dismissal for lack of standing when standing is not challenged on factual grounds. *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 691 (7th Cir. 2015). We "accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor unless standing is challenged as a factual

---

[2] The complaint does not allege that the residents completed authorization forms, but plaintiffs state in their briefing that all plaintiffs have signed forms conferring the same authority as the "Designation of Authorized Representative" form in the plaintiffs' appendix. We proceed as if this were alleged in the complaint.

matter." *Id.*, quoting *Reid L. v. Illinois State Bd. of Education*, 358 F.3d 511, 515 (7th Cir. 2004). The plaintiffs bear the burden of establishing standing. *Id.*

Article III of the Constitution limits the power of federal courts to deciding "cases" and "controversies." To meet this constitutional requirement, a plaintiff must establish that she has standing. She must allege and prove (1) a concrete and particularized injury, (2) caused by the actions of the defendant, (3) that would likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

The consultant-plaintiffs do not claim to have standing themselves. Instead, they say they are invoking the rights of the residents of the facilities whose Medicaid reimbursements are allegedly being withheld. Plaintiffs argue that because they have been granted authorization pursuant to regulation to sue on behalf of the residents—and because the residents themselves have standing—they may invoke the residents' standing. This adds a second component to the standing inquiry. In addition to establishing that the residents have standing under Article III, plaintiffs must also show that they are entitled to invoke the residents' standing.

A. *Scope of the Medicaid Regulation*

Plaintiffs identify 42 C.F.R. § 435.923, promulgated by the Secretary of Health and Human Services pursuant to 42 U.S.C. § 1302(a), as the source of their authority to sue on behalf of the residents. Here are the key provisions of § 435.923:

> (a)(1) The agency must permit applicants and beneficiaries to designate an individual or organization to act responsibly on their behalf in assisting with the individual's application and

> renewal of eligibility and other ongoing communications with the agency. …
>
> (b) Applicants and beneficiaries may authorize their representatives to—
>
> > (1) Sign an application on the applicant's behalf;
> >
> > (2) Complete and submit a renewal form;
> >
> > (3) Receive copies of the applicant or beneficiary's notices and other communications from the agency;
> >
> > (4) Act on behalf of the applicant or beneficiary in all other matters with the agency.

The regulation thus requires state Medicaid agencies to allow Medicaid participants to designate representatives to act on their behalf and describes the scope of possible representation. The regulation describes the scope of representation using three specific provisions and one general provision. The general provision in (b)(4) describes the scope of representation in superficially broad terms, allowing representatives to "Act on behalf of the applicant or beneficiary in all other matters with the agency."

Plaintiffs argue that the general provision allows beneficiaries to authorize representatives to sue HFS and the MCOs. The key phrase here is "matters with the agency." Plaintiffs say that phrase reaches *anything* having to do with the agency, including civil litigation.

The same basic rules that apply to statutory interpretation apply to regulatory interpretation. *Exelon Generation Co. v. Local 15, International Brotherhood of Electrical Workers, AFL-CIO*,

676 F.3d 566, 570 (7th Cir. 2012); see generally *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414–18 (2019). We ask first "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Exelon Generation*, 676 F.3d at 570, quoting *Ioffe v. Skokie Motor Sales, Inc.*, 414 F.3d 708, 710 (7th Cir. 2005). This inquiry looks to the entire text of the regulation, its purpose and context, and precedents or authorities that can inform the analysis. See *River Road Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 649 (7th Cir. 2011). If the language is ambiguous, we may consult the rulemaking record. *Exelon Generation*, 676 F.3d at 570.

In this case, the text of the regulation, the broader regulatory context and purpose, and the comments during rulemaking all indicate that "matters with the agency" relate only to communication and document processing in interactions *with* the agency and do not reach civil litigation against it.

First, the general provision in (b)(4) should be read in light of the preceding specific elements in the list to encompass only those interactions with the agency akin to submitting applications, renewing eligibility, and receiving agency communications. A general provision following a list of specific provisions should be interpreted considering those other provisions. *Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008) (canon of *ejusdem generis* teaches that "when a statute sets out a series of specific items ending with a general term, that general term is confined to covering subjects comparable to the specifics it follows"). Here, "other matters with the agency" most naturally encompasses only document processing and communication with the agency.

Second, the agency-facing character of the regulation supports this interpretation. The regulation requires agencies to

permit Medicaid participants to authorize representatives to "assist[] with the individual's application and renewal of eligibility and other ongoing communications with the agency." 42 C.F.R. § 435.923(a)(1). This agency requirement and the applicant/beneficiary right of authorization are two sides of the same coin. The agency must allow a certain kind of authorization, and beneficiaries may exercise the corresponding right of authorization. The possible scope of authorization that beneficiaries may give should be read as equivalent to the scope of representative activities that agencies are required to accept, encompassing only "the individual's application and renewal of eligibility and other *ongoing communications*." *Id.* (emphasis added).

Third, the purpose provision for the relevant Part of the Medicaid regulations and the broader regulatory context confirm that the scope of authorization is limited to agency-applicant communications and does not reach civil lawsuits. See *Schlaf v. Safeguard Property, LLC*, 899 F.3d 459, 465 (7th Cir. 2018) (observing that "We must interpret the plain language of the statute in light of its placement in the overall text of the statute" and looking to enacted statement of purpose); see also Jarrod Shobe, *Enacted Legislative Findings and Purposes*, 86 U. Chi. L. Rev. 669, 712–15 (2019) (describing value of enacted statements of purpose in determining meaning of other statutory provisions). The applicable purpose provision, 42 C.F.R. § 435.2, says that the Part sets forth eligibility requirements for state Medicaid programs and establishes "requirements and procedures that the Medicaid agency must use in determining and redetermining eligibility, and requirements it may not use." *Id.* § 435.2(c). In line with this stated purpose, the surrounding regulations in the subpart all pertain to agency policies and procedures. See 42 C.F.R. §§ 435.900–

435.965. The regulation allowing authorized representatives to deal with the agency is best understood congruent with this purpose as setting out the procedures that the Medicaid agency must itself use when determining the eligibility of an applicant.

Read in context, the regulation limits the scope of permissible representation to communication with the agency regarding eligibility and like matters. The responses of the Department of Health and Human Services to comments in the rulemaking process further indicate that the regulation is limited to communication *with* the agency, without any indication that it would extend to litigation *against* it. In issuing the final version of the rule, the Department wrote that it "proposed to define the term 'authorized representative' as an individual or organization that acts responsibly on behalf of an applicant or beneficiary in assisting with the individual's application and renewal of eligibility and other ongoing communications with the Medicaid or CHIP agency." 78 Fed. Reg. 42174 (July 15, 2013). The Department clarified that the regulations were "intended to be consistent with current state policy and practice, regarding the definition, designation, and responsibilities of 'authorized representatives.'" *Id.* Plaintiffs do not suggest that authorized representatives have ever sued on behalf of Medicaid beneficiaries as plaintiffs seek to do here, and we have no reason to believe otherwise.

The regulation in question—and even the authorization agreement presented by the plaintiffs—extends only to eligibility applications and determinations. These are not at issue in this case. According to the complaint, the residents have all been approved to receive Medicaid benefits. So even if the

authorization were permitted by the regulation, it would not allow for this suit.

B. *Regulations and Representative Standing*

We must offer one cautionary clarification to our analysis. Because the regulation does not authorize plaintiffs to bring civil claims on behalf of others, we do not need to decide whether a regulation can ever confer by itself the right to bring a claim on behalf of another and to invoke that person's Article III standing. Our reliance on interpretation of the Medicaid regulation should not be taken as an implied endorsement of plaintiffs' novel standing theory derived solely from a regulation.

The general rule is that plaintiffs must allege their own injuries to establish standing. See *Hollingsworth v. Perry*, 570 U.S. 693, 710 (2013) ("mere authorization to represent a third party's interests" will not confer standing to a party with no injuries of her own). Well-established exceptions to this rule allow a plaintiff to bring a claim on behalf of another. Guardians have standing when they sue on behalf of minors. E.g., *Sherman v. Community Consolidated School District 21 of Wheeling Township*, 980 F.2d 437, 441 (7th Cir. 1992); see also Fed. R. Civ. P. 17(a) (allowing guardians and similar representatives to bring claims on behalf of others). A "next friend" may have standing to bring a habeas corpus petition if she has a "significant relationship" with the real party in interest and the real party in interest is somehow disabled. See *Whitmore v. Arkansas*, 495 U.S. 149, 162 (1990). A similar next-friend doctrine allows third parties to sue on behalf of minors and incompetent persons. See Fed. R. Civ. P. 17(c). An association can also have standing to sue on behalf of its members. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S.

544, 546 (1996). And in *Hollingsworth v. Perry*, the Supreme Court suggested that an agency relationship combined with authorization by the principal could establish representative standing. 570 U.S. at 713–14.[3]

An uninjured plaintiff suing on behalf of another is normally required to identify one of these existing doctrines—most of which have deep common-law roots and all of which are limited in scope to ensure that the dispute is actually an Article III "case" or "controversy"—to establish representative standing. Plaintiffs do not have representative standing on any of these grounds. Their entire theory of the case assumes that a regulation can suffice, but they provide no support for that position. We need not reach that broader assertion, however, because even if in theory a regulation could confer representative standing on the mere basis of authorization, plaintiffs would not prevail under this regulation.

[3] This issue is distinct from that of third-party standing. The third-party standing doctrine applies only when a plaintiff has suffered an injury in fact. The plaintiff must herself have Article III standing, and must meet an *extra* condition to invoke the rights of a non-party in seeking redress for that injury. See, e.g., *Craig v. Boren*, 429 U.S. 190, 194–96 (1976); see also 13A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3531.9.3 (3d ed. 2019). Cf. *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 & n.3 (2014) (reframing "prudential standing" doctrine as constitutional or statutory but observing that "limitations on third-party standing are harder to classify [than zone-of-interests analysis] …. [C]onsideration of that doctrine's proper place in the standing firmament can await another day."). The problem of third-party standing is different from the one here. In this case, plaintiffs have not suffered an injury and cannot themselves establish Article III standing. Instead, they are suing on behalf of others.

C. *Underlying Standing of the Residents*

The underlying standing of the residents—which plaintiffs' standing relies upon—is also disputed. Because plaintiffs' standing is derivative of the residents' standing, they must show that the residents have suffered an injury or that one is imminent. A plaintiff may establish Article III standing by showing that harm is "certainly impending," but it is not enough to allege "possible future injury." *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 692 (7th Cir. 2015), quoting *Clapper v. Amnesty International USA*, 568 U.S. 398, 409 (2013). Plaintiffs allege that the residents are at risk of being discharged from the long-term care facilities where they are receiving nursing services and medical care. But plaintiffs conceded at oral argument that residents were not threatened with discharge and are presently receiving medical care. Discharging residents because of nonpayment to their care-givers would, in fact, violate federal law. See 42 C.F.R. § 483.15(c)(1)(E) (permitting discharge of a resident for nonpayment only where resident has not submitted paperwork for third-party payment or where Medicaid denies the claim and the resident refuses to pay). Suing state officials on the theory that one's clients may or will soon violate federal law is not a promising theory.

We are hesitant to resolve this case based on the residents' standing because they have not, by all appearances, been involved in the litigation. We have no reason to believe that their interests are being represented. Because the regulation does not give plaintiffs the right to sue on behalf of the residents, we need not reach this broader issue either.

* * *

None of this means, of course, that third parties may not bring claims on behalf of Medicaid beneficiaries. If a state does not comply with its Medicaid obligations and vulnerable populations do not receive timely notice of eligibility determinations or do not receive services, they may be entitled to remedies in court. Given the severe medical conditions that many of these people face, it may be difficult for them to assert their own rights. But there are established processes for bringing claims on behalf of others that—unlike the system read into the regulation by the consultants—contain safeguards and ensure that the interests of vulnerable individuals are represented. If a beneficiary lacks capacity, a guardian or next friend may sue on her behalf. These consultant-plaintiffs, however, do not have standing.

The judgment of the district court is

AFFIRMED.